Vera Lee WRIGHT, Adm'x of the Estate of B. N. Hunsucker, dec., Plaintiff in Error,

v.

Phoebe BLOOM, later Chestnut, later Couch, Defendant in Error.

No. 38823.

Supreme Court of Oklahoma.

Jan. 24, 1961.

Rehearing Denied March 7, 1961.

Lawrence H. Green, Bob E. Bennett, Ada, for plaintiff in error.

Willoughby & Cannon, by Calvert L. Cannon, Ada, for defendant in error.

BERRY, Justice.

The parties will be referred to as they appeared in the trial court.

In her petition filed below, plaintiff alleged that she was the daughter and the administratrix of the estate of B. N. Hunsucker, deceased, hereafter referred to as "deceased"; that on September 12, 1945, deceased purchased certain described property in the City of Ada, Oklahoma; that in the warranty deed which was recorded September 14, 1945, deceased and defendant were named grantees as husband and wife and as such, joint tenants with rights of survivorship; that deceased and defendant were not in fact husband and wife; that "the consideration for said joint tenancy with rights of survivorship wholly failed"; that "defendant procured her name in said warranty deed through her sinister and controlling influence over" deceased; that defendant promised deceased that if he would make her a joint tenant she would marry him, and upon such assurance and representations deceased caused her to be made a joint tenant; that defendant subsequently abandoned deceased; that deceased died seized of fee simple title in the property conveyed by the deed; that defendant claimed some right, title or interest in the

property. Plaintiff prayed judgment that the deed be reformed to speak the truth and that the defendant be found to have no right, title or interest in the property, and that title thereto be quieted.

In an amended petition plaintiff enlarged upon the allegations of her original petition relative to fraud on the part of defendant in the matter of her being named as a grantee in the deed.

In her answer defendant denied the allegations of plaintiff's petition. She alleged that she, as the surviving joint tenant, owned the property in controversy. She alleged further that plaintiff's action, which was instituted June 17, 1958, was barred by laches. By way of cross-petition, defendant sought an accounting for rents collected from the property by plaintiff and for judgment quieting defendant's title thereto.

The case was heard by the court. Following the hearing, judgment was entered in favor of plaintiff as to defendant's cause of action for an accounting but in favor of defendant as to her cause of action to quiet title. From order denying plaintiff's motion for new trial, plaintiff perfected this appeal. The defendant failed to perfect an appeal and for said reason no further reference will be made to defendant's action for an accounting.

Plaintiff contends that the trial court erred in (1) failing to find that deceased had defendant named as a grantee in the deed in consideration of her promise to marry him, and that since defendant was then and at all times thereafter married to another person, there was a total failure of consideration; in (2) "failing to find that defendant practiced fraud upon, and maintained a sinister and controlling influence upon the decedent, B. N. Hunsucker, both before and after the property was put in joint tenancy"; in (3) "finding that the plaintiff was barred by laches in maintaining this action"; in (4) "finding that the defendant accepted the joint warranty deed"; in (5) "refusing to allow plaintiff to amend her pleadings to conform to the proof put on at the trial after judgment".

The facts bearing on the contentions so made by plaintiff are in substance these:

In 1939 deceased resided in Ada, Oklahoma, where he engaged in business as a plumber. During said year he made a trip to Oklahoma City where he became acquainted with defendant. Shortly after meeting deceased she moved to Ada where she lived with deceased as his wife until 1945.

At the time deceased and defendant became acquainted, deceased had been divorced approximately one year. It appears that in the divorce proceeding deceased's wife was awarded their property which was of nominal value. At the time he became acquainted with defendant, he carried on his plumbing business from his home and his earnings were small. Prior to becoming acquainted with deceased, defendant had been twice married. It appears that the last marriage was never terminated. Deceased at all times knew that defendant was married to another man.

After deceased and defendant began to live together as husband and wife, defendant assisted deceased in his plumbing business by answering the telephone and assisting in collecting the charges that deceased made for his services as a plumber. By 1945 deceased and defendant had acquired sufficient funds with which to purchase one or more used automobiles and to make a down payment on the property in controversy. In order to secure the balance of the purchase price, deceased and defendant executed a promissory note and a mortgage securing the note. Deceased made all payments that were made on the note. The material portion of the deed in controversy reads as follows:

"* * * does hereby Grant, Bargain, Sell and Convey unto B. N. Hunsucker and Phoebe Florence Hunsucker, husband and wife, as joint tenants and not as tenants in common with full rights of survivorship, the whole estate to vest in the survivor in the event of the death of either, * * *".

We gather from the record that defendant's father resided at Oklahoma City in 1943. It appears that in 1945 or 1946 the father moved to Mason, Michigan. Defendant's father was ill from 1943 to the time of his death in February, 1957. Deceased died in September, 1957. From the latter part of 1945 to the date of her father's death, defendant cared for her father. For a matter of several months after defendant left deceased's home, they corresponded. Defendant testified that as a result of deceased's failure to reply to her letter, the correspondence ceased; that in 1956 and 1957 she and deceased talked by long distance telephone; that she intended to return to defendant's home when her father's health permitted and that she left her personal effects at his home when she left to care for her father. Defendant testified that she did not agree to marry deceased. She explained their relationship and intentions by saying "Our intentions, when we first met each other, we wanted to marry, anyway, I guess, just like most people do, but after we had lived together, we didn't seem—I guess, we just came, automatically, husband and wife, and we just didn't see any point in our getting married." She, however, also testified that she wished to marry deceased and that her relationship with him was not the way she "wanted it to be."

Plaintiff testified that in 1957 deceased "told her that her name was on the deed and that he had to get it off because she hadn't fulfilled the part of her bargain for the property"; that the bargain was "The marriage—to live with him and be man and wife."

■ Before considering the plaintiff's contention, we wish to point out that the deed in controversy on its face, clearly vested grantor's title to the property conveyed in the grantees (deceased and defendant) with the right in the surviving joint tenant to take the entire estate conveyed to the exclusion of the heirs of the deceased joint tenant. See 60 O.S.1951 § 74, and Draughon et al. v. Wright, 200 Okl. 198, 191 P.2d 921.

We will first consider the issue relative to consideration.

■ In Barton et al. v. Hooker, Okl., 283 P.2d 514, we held in substance that the fact that one of the joint tenants to a bank account and United States bonds, with provision for rights of survivorship, did not contribute any of the funds used in acquiring the account and bonds would not serve to defeat his rights to the account and bonds upon death of the joint tenant who furnished the funds. Our holding in the foregoing particulars as applied to intangibles is in keeping with the general rule as announced in 48 C.J.S. Joint Tenancy § 3 (4), p. 925. We are of the opinion that the rule so applied to intangibles is applicable to real property held in joint tenancy with rights of survivorship. In so holding, we have not overlooked the fact that there was ample evidence sustaining a finding on the trial court's part that as to defendant the joint tenancy in controversy was not without consideration. In fact, by letter, under date of December 11, 1945, deceased stated to defendant that "if you are not going to live with me I'd like for you to come and we will sell the place and you can have your part that is half of it. You stayed with me through the hard times and helped me make what we have now."

■ We are unable to agree that the trial court erred in finding that defendant did not practice fraud upon deceased. As pointed out, defendant's reason for leaving deceased's home in the latter part of 1945 was in order to care for her father who was ill, and there is in fact evidence that deceased was agreeable that defendant stay with and care for her father.

On the issue based upon the contention that defendant did not accept the deed, the evidence shows that defendant read the deed and that she executed the note and mortgage. We are of the opinion that this evidence clearly shows that she accepted the deed.

■ After judgment had been rendered, plaintiff moved to amend her pleading to conform to the proof by alleging that de-

**1084**

fendant, by abandoning deceased, severed the joint tenancy and that defendant did not accept the deed. To our way of thinking, such an amendment would only have enlarged upon allegations made in plaintiff's petition and amended petition and for said reasons the trial court neither abused its discretion nor erred in denying the motion to amend the amended petition in the foregoing particulars.

In view of the conclusion reached on the issues that we have considered, it is unnecessary to consider plaintiff's contention to the effect that the trial court erred in holding that her action was barred by laches.

Affirmed.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and DAVISON, HALLEY, JOHNSON, JACKSON and IRWIN, JJ., concur.